UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SANDRA R. GREGORY,

       Plaintiff,                             Civil Action No. 16-12572

v.                                   HON. MATTHEW F. LEITMAN
                                     U.S. District Judge
                                     HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sandra R. Gregory ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be DENIED, and that Plaintiff's Amended Motion for Summary Judgment [Docket #29] be GRANTED to the extent that the case is remanded for further administrative proceedings.

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI on July 29, 2013, alleging disability as of January 31, 2011[1] (Tr. 119-124). Upon denial of the claim, Plaintiff requested an administrative hearing, held on January 16, 2015 in Livonia, Michigan (Tr. 29). Administrative Law Judge ("ALJ") Dennis M. Matulewicz presided. Plaintiff, represented by attorney Helen Manesia, testified (Tr. 36-50), as did Vocational Expert ("VE") John Stokes (Tr. 50-56). On March 6, 2015, ALJ Matulewicz found that while Plaintiff was unable to perform her past relevant work, she could perform a significant range of other work (Tr. 14-21). On May 5, 2016 the Appeals Council denied review (Tr. 1-7). Plaintiff filed suit in this Court on July 8, 2016.

# II. BACKGROUND FACTS

Plaintiff, born July 7, 1965, was 50 at the time of the administrative decision (Tr. 21, 119). She completed a GED in 1982 and worked previously as a cleaner and housekeeper (Tr. 152). She alleges disability as a result of right knee problems, hypertension, and back pain (Tr. 151).

## A. Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff, formerly married, lived with her mother, her two minor children, and her 24-year-old daughter (Tr. 38). Her physical condition had worsened since the alleged July 29, 2013 onset of disability (Tr. 39). On a one to ten scale, she regularly experienced level

---

[1]The alleged onset of disability date was later amended to July 29, 2013 (Tr. 14).

"nine" bilateral knee pain with medication (Tr. 40). She required the use of a cane since 2013 (Tr. 40). She had been additionally prescribed the use of braces but was unable to afford them (Tr. 40).

Plaintiff was unable to lift more than eight pounds and relied on her adult daughter and mother to perform most of the household chores (Tr. 42-43). One of Plaintiff's minor children has a learning disability, requiring Plaintiff to prepare his clothes, groom him, and help him with his homework (Tr. 42). Plaintiff denied the use of tobacco or illicit substances but admitted to using alcohol "on special occasions" (Tr. 43).

Plaintiff had not undergone surgeries for back, neck, or knee problems, but had bilateral knee surgery scheduled for two weeks after the hearing[2] (Tr. 44). Aside from the knee problems, she was unable to work due to her inability to sit or stand for extended periods as a result of lower back problems (Tr. 45). She had never held a driver's license and had been taken to hearing by her parents (Tr. 46). She had not received mental health treatment (Tr. 46). A "good day" was one where she was able to "sit[] down" for long periods (Tr. 46). On "bad" days, she spent most of the day reclining due to knee pain (Tr. 47). Her television viewing was limited to news shows, and "The Judge" (Tr. 47). She never grocery shopped, but wrote out a grocery list for her daughter and 11-year-old son (Tr. 47).

---

[2]The records do not include evidence of a post-hearing knee procedure.

In response to questioning by her attorney, Plaintiff reported that she was unable to sit or stand for more than 30 minutes (with or without the use of a cane) before requiring a position change, but that sitting was generally her most comfortable position (Tr. 48-49). She experienced sleep disturbances and was unable to sleep for more than one hour at a time (Tr. 48). She experienced the side effects of drowsiness and tiredness from Norco (Tr. 49). She did not attend school activities or parent/teacher conferences but kept in touch with her children's teacher by telephone (Tr. 49).

## B. The Medical Records

### 1. Treating Records

In April, 2013, Virayalakshmi R. Thandra, M.D. noted Plaintiff's report of right knee pain and swelling (Tr. 210). Plaintiff denied tingling or numbness but reported difficulty walking (Tr. 210). June, 2013 imaging studies of the right knee showed minor degenerative spurring with "moderate to large . . . joint effusion" (Tr. 209, 278). Dr. Thandra observed moderate swelling and a reduced range of motion (Tr. 210). A neurological examination was unremarkable (Tr. 210). Dr. Thandra made a diagnosis of knee and leg sprain (Tr. 210). She prescribed a short knee brace (Tr. 211). Imaging studies from the same month showed mild narrowing of the medial compartment with a small effusion (Tr. 214).

In July, 2013, Plaintiff sought emergency treatment for right-sided lumbar spine and knee pain (Tr. 220). She reported level "ten" pain on a scale of one to ten but was noted to be ambulatory (Tr. 220). She reported the onset of pain after falling on ice the previous winter (Tr. 219). She was advised to have the knee "drained" and was prescribed Vicodin upon discharge (Tr. 219). She reported that the pain resolved while sitting but was still present while walking (Tr. 219). Plaintiff demonstrated a normal range of motion, normal strength, and muscle tone (Tr. 221). Imaging studies showed moderate suprapatellar joint effusion but no other abnormalities (Tr. 224).

The same month, Rose Ibrahim, M.D. re-prescribed Vicodin; precluded all lifting, pushing, and pulling; and prescribed physical therapy twice a week (Tr. 231, 238). Treating notes state that Plaintiff required a cane and exhibited right knee tenderness (Tr. 239). A physical examination was otherwise unremarkable (Tr. 238). The following month, Dr. Ibrahim again precluded lifting, pulling, and pushing (Tr. 239). She advised Plaintiff to exercise, attend physical therapy, and lose weight (Tr. 239). October, 2013 records note diagnoses of scoliosis and degenerative disc disease (Tr. 240). Plaintiff continued to take Vicodin (Tr. 240). November, 2013 imaging studies showed "minor" arthritis of the left knee and lumbar spine (Tr. 250). In December, 2013, Plaintiff reported "a lot of pain in both knees" (Tr. 241). Dr. Ibrahim prescribed Norco (Tr. 241). Treating notes state that Plaintiff appeared alert (Tr. 241).

Dr. Ibrahim's January, 2014 records note that Plaintiff was alert and in no acute distress despite reports of ongoing knee and back pain (Tr. 242). Dr. Ibrahim advised the use of a right knee brace (Tr. 242-243). A neurological examination was unremarkable (Tr. 243). Dr. Ibrahim's April, 2014 records again state that Plaintiff was alert and in no acute distress but reported bilateral lower extremity and lower back pain (Tr. 246). Dr. Ibrahim precluded all lifting, pushing, pulling, and the use of salt (Tr. 246). She ordered a pregnancy test (Tr. 246). The following month, Plaintiff reported level "eight" pain (Tr. 247). Dr. Ibrahim again precluded all lifting, pushing, or pulling (Tr. 247). June, 2014 treating records note ongoing lower back and knee pain but no acute distress (Tr. 248). Once again, Dr. Ibrahim precluded all lifting, pushing, or pulling (Tr. 248).

An October, 2014 MRI of the right knee showed moderate joint effusion with a "mild size Baker's cyst" and severe chondrosis of the medial compartment (Tr. 259, 269-270). An MRI of the lumbar spine from the same month showed mild spondylosis at L4-L5 and moderate spondyloarthrosis at L5-S1 (Tr. 260-261, 272-273).

Later the same month, orthopedist Jiab Suleiman, D.O. noted Plaintiff's report of pain upon walking and range of motion limitations due to knee problems (Tr. 279-280). Plaintiff noted that the level "six" pain was intermittent (Tr. 279). Dr. Suleiman observed that Plaintiff was "a good historian, . . . active and healthy and . . . alert and [fully] oriented" (Tr. 279). Dr. Suleiman noted that Plaintiff was in no acute distress and that a neurological examination was within normal limits (Tr. 280). He observed a straight spine but bilateral

knee tenderness (Tr. 280). He diagnosed her with internal derangement of the knees and recommended home exercises (Tr. 280).

A November, 2014 MRI of the left knee showed large suprapatellar joint effusion with "small to moderate Baker's cyst which is likely ruptured," and "diffuse mild to moderate cartilage thinning" of the medial compartment (Tr. 256-257).

## 2. Non-Examining Sources

In September, 2013, Byong-Du Choi, M.D. performed a non-examining review of the treating records on behalf of the SSA, finding that Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently; sitting, standing, or walking for six hours in an eight-hour workday; and unlimited pushing and pulling (Tr. 63). As to the postural limitations, Dr. Choi found a limitation to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 63). He found no other limitations (Tr. 63).

## 3. Material Submitted After the ALJ's March 6, 2015 Opinion[3]

---

[3]

None of the newly submitted material provides grounds for remand. The sixth sentence of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Material that was not included in the administrative transcript before the ALJ and is not duplicative of formerly submitted records is "new." *Street v. Commissioner of Social Security*, 390 F.Supp.2d 630, 641–642 (E.D. Mich.2005). Because the October and November, 2014 imaging studies (Tr. 284-291) duplicate the records considered by the ALJ they are not new and thus, do not justify a remand.

For differing reasons, Dr. Rai's March, 2016 disability assessment does not provide grounds for a "Sentence Six" remand. Dr. Rai's disability opinion post-dates the administrative decision by an entire year. Plaintiff's condition subsequent to the date of

An October, 2014 MRI of the right knee showed moderate joint effusion with a "mild size Baker's cyst" and severe chondrosis of the medial compartment (Tr. 286). An MRI of the lumbar spine from the same month showed mild spondylosis at L4-L5 and moderate spondyloarthrosis at L5-S1 (Tr. 288-290). November, 2014 imaging studies of the right knee showed only "mild narrowing of the medial compartment (Tr. 285).

In March, 2016, Krishna Rai, M.D. completed an assessment of Plaintiff's work-related limitations, noting that Plaintiff was currently taking Motrin for knee pain and experienced level "eight" pain on a scale of one to ten (Tr. 295). Dr. Rai opined that Plaintiff was limited to sitting, standing, or walking for one hour each day due to knee and back problems and thus, was incapable of even sedentary work (Tr. 296, 299). She precluded all

---

decision is intrinsically irrelevant to the current claim for benefits. *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 712 (6th Cir. 1988). To be sure, the form completed by Dr. Rai states that her responses should reflect Plaintiff's condition "as of July 29, 2013" which is Plaintiff's amended alleged onset of disability date under the current application for benefits (Tr. 14). However, Plaintiff does not provide "good cause" as to why Dr. Rai failed to complete the assessment until one year after the administrative determination. It appears that the March, 2016 opinion of disability "as of July 29, 2013" was composed for the specific purpose of challenging the ALJ's non-disability determination. Post-decision evidence created for the purpose of "rebutting" an ALJ's decision does not satisfy the "good cause" requirement of the sixth sentence of § 405(g). *Haney v. Astrue*, 2009 WL 700057, *6 (W.D. Ky. March 13, 2009)("[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability")(*citing Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); *See also Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008)(*citing Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374-75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)).

lifting (Tr. 299). She found that Plaintiff's physical limitations were likely permanent (Tr. 297). She found that Plaintiff was limited to simple grasping and fine manipulation with the upper right extremity but precluded from upper extremity pushing on the right[4] (Tr. 300). She precluded all pushing and pulling of the lower extremities (Tr. 300). She found that Plaintiff would be required to recline for extended periods each day (Tr. 300).

## C. VE Testimony

VE Stokes classified Plaintiff's former jobs as a housekeeping/cleaner as unskilled and exertionally light (medium as performed); child monitor, semiskilled/medium; and airline caterer unskilled/medium[5] (Tr. 51-52). The ALJ posed the following set of restrictions, describing a hypothetical individual of Plaintiff's age, education, and work experience who could perform light work requiring her to "lift 20 pounds maximum, 10 pounds frequently, 20 pounds occasionally" and sit "six hours out of a[n] eight-hour work shift" *or*, sedentary work, "10 pounds maximum, five pounds frequently, 10 pounds occasionally. Sit six hours out of a[n] eight hour work shift. Stand and or walk two hours out of a[n] eight hour work shift" (Tr. 52). For either light or sedentary work, the ALJ posed additional limitations:

---

[4]Dr. Rai made no mention of limitation of the left upper extremity (Tr. 300).

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[W]e should never use ladders, a scaffold, or ropes, only occasionally use ramps, and stairs, stoop, crouch, and balance. She should avoid walking on uneven surfaces. Avoid concentrated exposure to hazards including dangerous unprotected machinery or work at unprotected heights and only occasionally bend, twist, turn at the waist, or neck. Could such a person perform any of the claimant's past work? (Tr. 52).

Based on the hypothetical limitations, the VE found that the individual would be capable of performing Plaintiff's past relevant work as a housekeeping/cleaner as the job was customarily performed at the light exertional level (Tr. 52). The VE found additionally that the hypothetical individual could perform the exertionally light work of a ticket taker (2,800 positions in the State of Michigan); courier/messenger/office helper (2,800); and small products assembler (3,500) (Tr. 53-54). In the sedentary category, the VE found that the same individual could perform the work of a telephone information clerk (2,400) or document preparer (3,100) (Tr. 54).

In response to questioning by Plaintiff's attorney, the VE testified that the need to use a cane would preclude only the ticket taker job (Tr. 55). He stated that the need to be "off task" for more than 10 percent of the workday due to the effects of pain medication, the need to take unscheduled breaks, or, the need to miss at least two days of work each month would eliminate all of the above-stated jobs (Tr. 55).

### D. The ALJ's Decision

Citing the medical records, ALJ Matulewicz found that Plaintiff experienced the severe impairments of "moderate joint effusion of the right knee with mild size Baker's Cyst, Mild Spondylosis, Hypertension, and Left Knee Meniscus Tear" but that none of conditions

met or medically equaled one of the "listed impairments" under 20 C.F.R. Part 404, Subpart

P, Appendix 1 (Tr. 16). The ALJ found that Plaintiff had the residual functional capacity

("RFC") for sedentary work with the following additional restrictions:

> [L]ift[] up to five pounds frequently, and ten pounds occasionally . . . sit six
> hours in an eight-hour work shift and stand/walk for two hours in an eight-
> hour work shift. The claimant should never use ladders, ropes, or scaffolds,
> only occasionally use ramps or stairs, stoop, crouch, kneel, crawl, and balance.
> The claimant should avoid walking on uneven surfaces, avoid concentrated
> exposure to hazards, including dangerous, unprotected machinery or work at
> unprotected heights, and can only occasionally bend, twist, or turn at the waist
> and/or neck (Tr. 17).

Citing the VE's testimony, the ALJ concluded that the RFC would allow Plaintiff to perform

the sedentary work of a telephone information clerk and document preparer (Tr. 20-21, 54).

The ALJ discounted Plaintiff's alleged degree of limitation. He noted that despite

a prescription for knee braces, the medical evidence "revealed generally minor and normal

findings" (Tr. 18). He cited the MRI of the right knee showing only a "small supra patellar

joint effusion and mild narrowing of the medial compartment" (Tr. 18). The ALJ noted that

July, 2013 emergency room records show that Plaintiff was ambulatory with a full range of

motion and full strength (Tr. 19). As to the lumbar spine condition, the ALJ noted that she

had been diagnosed with mild spondylosis at L4-L5 and moderate spondyloarthrosis at L5-S1

but did not experience disc protrusion or stenosis of the spinal canal (Tr. 19). He noted that

neurological testing yielded unremarkable results (Tr. 19).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Plaintiff's "Borderline" Age

At the time of the March 6, 2015 determination, Plaintiff was four months and one day short of her 50th birthday (Tr. 21, 119). At a minimum, the ALJ's finding that Plaintiff was limited to unskilled, sedentary work impacts a future application for benefits. Under Medical–Vocational Rule 201.14, an individual closely approaching advanced age with Plaintiff's educational background, no transferrable skills, and a limitation to sedentary work generally directs a finding of disability. 20 C.F.R. part 404, subpart P, App. 2. "Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience

or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains." *Id.* Assuming that Plaintiff's condition did not improve subsequent to the ALJ's March 6, 2015 decision, she would be eligible for benefits as of her 50th birthday if she chose to reapply.

However, Plaintiff seeks benefits in the present claim on the basis that the circumstances of her case support the finding that she was a *de facto* individual "closely approaching advanced age" as of the date of the decision. *Plaintiff's Amended Brief,* 9-17, *Docket #29,* Pg ID 428. Plaintiff is correct that 20 C.F.R. § 404.1563(b) instructs that the age categories are not to be applied "mechanically in a borderline situation." If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category" would result in a finding of disability, the ALJ will consider "whether to use the older age category after evaluating the overall impact of all the factors" relevant to a determination. *Id.* In the instance "a claimant presents a borderline age situation," the ALJ uses a "'sliding scale' approach" using the "the time period between the claimant's actual age and his or her attainment of the next higher age" and, "progressively more additional vocational adversities." *Bowie v. CSS,* 539 F.3d 395, 399 (6th Cir.2008)(punctuation omitted)(*citing Hearings, Appeals and Litigation Law Manual (*"HALLEX"*)* II–5–3–2.[6]

---

[6]

    *Bowie* sought direction from *HALLEX,* which provides "principles, procedural guidance and information" to adjudicators and staff of the Office of Hearings and Appeals," *Bowie* at 397. However, the Court correctly noted that *HALLEX* was not binding on the Courts. *Id.*

"Examples of 'additional vocational adversities'" outside of the underlying mental or physical limitations include "having only a marginal ability to communicate in English," and, "a history of work experience in an unskilled job in one isolated industry or work setting." *Id.* "'Absent a showing' of additional adversities ... the adjudicator will use the claimant's chronological age.'" *Id.* at 397-398.

Plaintiff has failed to identify vocational adversities aside from the limitations already accounted for by the RFC. She denied work-related limitations other than back problems, knee problems, and hypertension. She denied psychological limitation at the hearing. She does not experience limitations in speaking or comprehension. Her past relevant work as a cleaner, housekeeper, and childcare worker cannot be characterized as work in "an isolated industry or setting." Her former jobs include semiskilled work and she has provided no evidence that her mental or cognitive abilities have deteriorated since that time. While she claims that she worked only sporadically in the past view years, she does not allege disability before July 29, 2013 (Tr. 14). The medical transcript showing that she began experiencing knee problems after falling in the winter of 2013 does not contain any suggestion that Plaintiff experienced disabling limitations before the alleged onset date (Tr. 14).

Plaintiff relies on *Turner v. Astrue*, 2011 WL 2783832, at *4 (S.D.Ohio July 11, 2011) in which the court remanded to the administrative level for further fact-findings for determination of whether the claimant's multiple vocational adversities mandated a finding that she was a *de facto* individual approaching advanced age seven months prior to her 50th

birthday.  Aside from the fact that in both this case and *Turner,* the claimant is 49, *Turner* is

inapplicable to the present claim.  Ms. Turner had an 11th grade education whereas present

Plaintiff obtained a GED.  *Turner* at *1.  Ms. Turner's work history, in contrast to Plaintiff's,

was limited to unskilled work.  *Turner* at *9.  In addition to the underlying condition of

breathing problems, Ms. Turner experienced "psychological issues" creating mental

restrictions in activities of daily living and concentration, whereas present Plaintiff denied

psychological problems.  *Id.* at *1, 9. While Plaintiff alleges the side effect of drowsiness

from medication side effects, her claims are not borne out by the treating records which fail

to show any degree of concentrational limitation.  Unlike Plaintiff, Ms. Turner was diagnosed

with morbid obesity (318 pounds) and  a severe vision impairment,  *id.* at *9*, whereas

Plaintiff's limitations, by her own account, are limited to knee and lower back problems, and

well-controlled hypertension.

       Further, the ALJ acknowledged Plaintiff's age in making his findings. The ALJ

stated that Plaintiff "was born on July 7, 1965, [] was 48 years old," and, "a younger

individual age 45-49 on the date the application was filed" (Tr. 20).   The ALJ's

acknowledgment that he found her to be a "younger individual" despite the fact that she was

four months away from her 50th birthday at the time of the decision sufficiently addresses her

"borderline" status.[7]  While § 404.1563(b) "directs the ALJ to 'consider' using the older age

_____

[7]Plaintiff erroneously states that she was three month short of her 50th birthday at
the time of the administrative decision. *Plaintiff's Amended Brief* at 9.

category in a borderline case, "'nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age category determination.'" *Turner* at \*4 (*citing Bowie* at 399). As such, "there is no '*per se* procedural requirement to address borderline age categorization in every borderline case.'" *Id.* Under 42 U.S.C. § 405(g) "[t]he only *per se* procedural requirement is the ALJ's fundamental duty in all cases" is "'to provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence.'" *Id.* (*citing Bowie* at 400). Because in the present case, the determination that Plaintiff was a "younger individual" and not entitled to a "promotion" to the next age category is generously supported by the record, a remand on this basis is not warranted.

### B. The Treating Physician Analysis

Plaintiff also contends that the ALJ failed to provide "good reasons" for rejecting Dr. Ibrahim's August, 2013 through June, 2014 preclusion on all lifting, pushing, or pulling (Tr. 19). *Plaintiff's Amended Brief* at 21.

### 1. Basic Principles

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c) (2)). However, in the

presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

## 2. Application to the Present Case

In July, 2013, Dr. Ibrahim precluded all lifting, pushing, and pulling following Plaintiff's emergency treatment for knee and back pain (Tr. 231, 238). Dr. Ibrahim renewed

the preclusion the following month and again in October, 2013 (Tr. 239-240). In December, 2013, Dr. Ibrahim precluded lifting and pulling (Tr. 241). In January and February, 2014, she noted tenderness of the lower back and that the right knee were "very tender" (Tr. 242, 244) and in February, 2014, precluded lifting (Tr. 244-245). In April, May, and June, 2014, Dr. Ibrahim precluded all lifting, pushing, and pulling (Tr. 246-248).

The ALJ found as follows as to Dr. Ibrahim's repeated finding that Plaintiff was unable to lift, push, or pull:

> During treatment at the Romulus Medical clinic, the claimant was instructed against lifting, pushing or pulling, to attend physical therapy twice a week, to lose weight, diet, and exercise. However, these instructions are vague, as they do not specify the particulars of the claimant's functionality, and they are non-durational. Accordingly, the undersigned assigns no weight to this opinion (Tr. 19).

By any measure, the ALJ's discussion of the Dr. Ibrahim's treating opinions was inadequate. First, the ALJ did not identify Dr. Ibrahim by name or title and it is unclear whether he recognized that the Dr. Ibrahim's was a treating source and that her opinions were entitled to deference. Second, while the ALJ refers to Dr. Ibrahim's restrictions as an "opinion," Dr. Ibrahim asserted on at least nine separate occasions that Plaintiff experienced exertional limitations which would preclude even sedentary work. The ALJ is correct that the preclusions contained no time limitations. However, Dr. Ibrahim issued the preclusions at roughly one or two-month intervals between July, 2013 and June, 2014. Read together, the more reasonable interpretation of the multiple "non-durational" preclusions is that Dr. Ibrahim believed that the restrictions were ongoing for a period of at least at year. Contrary

to the ALJ's characterization, Dr. Ibrahim's findings that preclusion on pushing, pulling, and lifting were not "vague" (Tr. 19). Despite the fact that the ALJ might disagree with the findings or that substantial evidence supports a lessor degree of limitation, the limitations imposed by Dr. Ibrahim were wholly unambiguous. Likewise, the ALJ's reference to the exertional preclusions as "instructions" does not relieve him from the duty to provide "good reasons" for rejecting them. § 1527(c).

Finally, it is important that Plaintiff understand why Dr. Imbrahim's opinions were rejected. *Cole* at 940 (even if the ALJ reaches the same conclusion on remand, plaintiff "will then be able to understand the Commissioner's rationale and the procedure through which the decision was reached."). *See also Hensley*, 573 F.3d at 267 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."). As such, the ALJ's failure to provide satisfactory reasons for discounting Dr. Ibrahim's opinions requires a remand for further proceedings.

### C. Plaintiff's Other Arguments for Remand

Plaintiff argues additionally that the ALJ's credibility determination is not supported by substantial evidence. *Plaintiff's Amended Brief* at 17. She argues, in effect, that the limitations caused by knee and back pain were overlooked by the ALJ. *Id.* at 17-21.

The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[8]  As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996).  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[9]

---

[8]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, below. Nonetheless, SSR 96-7p applies to the present determination, decided on May 11, 2015. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

[9]

In addition to an analysis of the medical evidence, 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:  (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Here, the ALJ began the credibility analysis by acknowledging Plaintiff's claim that she was unable to cook, shop, or do housework (Tr. 18). He went on to note that the medical records did not support Plaintiff's claims of extreme physical limitation or intractable pain (Tr. 18). He cited the treating records showing "no acute distress" and full motor strength (Tr. 18). He observed that while the imaging studies showed some degree of limitation, the mostly "mild" to "moderate" findings to not support a disability finding (Tr. 19). He noted that the neurological testing yield overwhelmingly unremarkable results (Tr. 19). The ALJ's findings are consistent with my own review of the medical transcript.

Procedurally, then, it would appear that the ALJ's credibility analysis was sound, and standing alone would not provide a basis for remand. However, because that analysis might be impacted by the ALJ's re-assessment of the treating physician's opinion, the ALJ should revisit the issue of Plaintiff's credibility on remand.

The Court declines to discuss Plaintiff's additional argument that the job testimony was tainted by the ALJ's failure to include all of her relevant limitations in the hypothetical question to the VE. *Plaintiff's Amended Brief* at 23-25. Here, Plaintiff argues in large part the ALJ errantly omitted Dr. Ibrahim's preclusions on lifting, pushing, and pulling from the hypothetical question. As discussed above, the ALJ's failure to acknowledge Dr. Ibrahim's status as a treating source and articulate the reasons for the weight accorded to the treating opinion requires a remand for further fact-finding. The question of whether Dr. Ibrahim's findings should be included in the hypothetical question hinges on the underlying question

of whether they should be altogether rejected or adopted in part or whole.  *See* Section **B.** *above.*  Because the ALJ has yet to provide an adequate discussion of the treating findings, the question of whether those findings should be incorporated into the hypothetical restrictions posed to the VE is premature.

For overlapping reasons, I recommend a remand for further administrative proceedings and fact-finding rather than an award of benefits.   A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  In this case, a remand for benefits prior to the resolution of the unresolved factual issues discussed in Section **B.** would be premature. Accordingly, I recommend a remand for further administrative proceedings consistent with the above analysis.

## VI.  CONCLUSION

For these reasons,  I recommend that Defendant's Motion for Summary Judgment [Docket #23] be DENIED, and that Plaintiff's Amended Motion for Summary Judgment [Docket #29] be GRANTED to the extent that the case is remanded for further administrative proceedings consistent with this Report and Recommendation.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation

are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 16, 2017          s/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on August 16, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants August 16, 2017.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen